IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN HEARD,

    Plaintiff,

                              No. 2:15-cv-00516 MCA/SMV

v.

GREGG MARCANTEL, et al.,

    Defendants.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM

Defendants James Frawner and Management & Training Corporation[1] (collectively "Defendants"), by and through their counsel of record Keleher & McLeod, P.A., and pursuant to Fed. R. Civ. P. 56, hereby move for summary judgment on Plaintiff's claims. In support of this motion, Defendants have concurrently filed their Martinez Report, which, in turn, is supported by the affidavit of Otero County Prison Facility ("OCPF") Warden Rick Martinez. That affidavit authenticates and explains the legitimate penological interests served by New Mexico Corrections Department ("NMCD") policy CD-151201(E)(6)(e), which prohibits hardbound books and publications containing photographs of female(s) partially or totally nude and/or posed in a sexually explicit position.

## INTRODUCTION

Plaintiff challenges the constitutionality of two subsections of CD-151201(E)(6)(e) which prohibits hardbound books and publications containing photographs of female(s) partially or totally nude and/or posed in a sexually explicit position. (Complaint [Doc. 1].) Specifically, Plaintiff claims that neither provision is rationally related to a legitimate penological interest. (*Id*.) Plaintiff further claims that the photographs provision is unconstitutional because it only

---

[1] Defendant Gregg Marcantel is represented by separate counsel.

addresses females and relies too heavily on the discretion of the personnel screening the mail. (*Id.*)

Warden Frawner and MTC should be summarily dismissed from this matter because Plaintiff has failed to include any factual allegations against them. (*See generally* Complaint [Docs. 1, 9].) In the absence of any factual allegations demonstrating personal involvement of either Warden Frawner or MTC, dismissal with prejudice is warranted. Further, the policies at issue in this lawsuit are expressly aimed at advancing jail security and protecting the safety of jail personnel and other inmates. The Court should uphold them as constitutional and dismiss Plaintiff's claims with prejudice.

## UNDISPUTED FACTS

Based on the aforementioned affidavit and authenticated documents, the following facts are not in dispute:

1. Plaintiff has been incarcerated at OCPF from July 24, 2013 through present. ([Doc. 38] Martinez Report, Ex. 1, Affidavit of Warden Martinez ("Martinez Aff."), ¶ 6.)

**Hardbound books**

2. When an OCPF inmate bears the associated mailing costs, he is allowed broad access to various publications, subject to reasonable limitations imposed by prison officials to protect public safety and institutional order and security. (*Id.*, ¶ 11.)

3. CD-150201(F)(4) provides that "Inmates may acquire books, magazines, and newspapers from the publisher, not to exceed the allowable quantity as per institutional custody limitation. Nudity, pornography, and/or gang-related materials are prohibited." ([Doc. 38] Martinez Report, Ex. 1, Martinez Aff., ¶ 9 and [Doc. 38-5] HEARD, J. 00038.)

4. CD-151201(J) provides that "[b]ooks and magazines will be accepted and delivered to inmates if they are received directly from the publisher or vendor, subject to other

restrictions set out herein and in other policies." ([Doc. 38] Martinez Report, Ex. 1, Martinez Aff., ¶ 8 and [Doc. 38-2] HEARD, J. 00006.)

5. CD-151201(E)(6)(e) prohibits hardbound books and publications containing photographs of female(s) partially or totally nude and/or posed in a sexually explicit position. ([Doc. 38] Martinez Report, Ex. 1, Martinez Aff., ¶ 8 and [Doc. 38-2] HEARD, J. 00004.)

6. CD-151201(E)(6)(c) also prohibits obscene material that "appeals primarily to the prurient interests or is patently offensive." (*Id.*)

7. OCPF's mail and correspondence policy -- OCPF 707(G)(4) -- prohibits "sexually explicit material." ([Doc. 38] Martinez Report, Ex. 1, Martinez Aff., ¶ 10 and [Doc. 38-8] HEARD, J. 00078.)

8. OCPF 707(B)(6) and (D) permits inmates to receive packages, such as paperback books, so long as the inmate makes advance arrangements with the Warden. ([Doc. 38] Martinez Report, Ex. 1, Martinez Aff., ¶ 14 and [Doc. 38-8] HEARD, J. 00076.)

9. OCPF has a library where inmates can access books. ([Doc. 38] Martinez Report, Ex. 1, Martinez Aff., ¶ 16; (*see also* Complaint [Doc. 1], 8 (Plaintiff representing the OCPF library has books that inmates can check out).)

10. One of the reasons for these hardbound book policies are the potential for hiding contraband and/or weapons in the hardbound books. ([Doc. 38] Martinez Report, Ex. 1, Martinez Aff., ¶ 12.) In addition, the restriction on hardbound books being permitted into the facility reduces the time and resources necessary to inspect and search such property. (*Id.*)

11. OCPF personnel regulate incoming mail and publications to prevent the introduction of contraband, which threatens to adversely affect the security and safety of OCPF. (*Id.*, ¶ 13.)

12. OCPF inmates that want to purchase paperback books through the mail are permitted to do so if they make advance arrangements with the Warden and the paperback books are purchased from a publisher or vendor. (*Id*., ¶ 14.)

13. Allowing inmates to purchase paperback books only from the publisher or vendor helps to prevent contraband from being smuggled into OCPF and lessens the administrative burden on OCPF personnel who must inspect each book. (*Id*., ¶ 15.)

**Rejection of materials**

14. Prison officials reject incoming materials that are obscene, meaning materials that appeal primarily to the prurient interests or are patently offensive, that contain nudity or pornography, and/or that show female(s) partially or totally nude and/or posed in a sexually explicit position. (*Id*., ¶ 17.)

15. OCPF personnel reject obscene materials to protect institutional security, to facilitate the rehabilitation of sex offenders, and to prevent sexual harassment. (*Id*., ¶ 18.)

16. Sexually explicit materials can lead to the open performance of lewd acts, which disrupt the facility's overall security and order. (*Id*., ¶ 19.)

17. Sexually explicit material may inflame a prisoner, excite a prisoner, and perhaps result in the assault of another prisoner. (*Id*.)

18. Such materials inhibit the treatment and management of sex offenders. (*Id*., ¶ 20.) OCPF is the home to a Sex Offender Treatment Program. (*Id*.) This means that a large portion of OCPF's population, including Plaintiff, are sex offenders. (*Id*.)

19. Obscene materials increase the potential for sexual harassment complaints by OCPF staff. (*Id*., ¶ 21.) For example, OCPF staff might otherwise be forced to view obscene

materials while performing their duties, and they might be subject to comments from inmates comparing them with the individuals in the obscene photos. (*Id.*)

20. OCPF is unaware of any obvious or easy alternative that would allow inmates access to obscene publications without significantly and adversely affecting the above-referenced interests. (*Id.*, ¶ 24.)

21. Plaintiff is a party to a case pending before the Honorable Kenneth Gonzales where the Court has already analyzed CD-151201(E)(6)(c) – which prohibits obscene material that "appeals primarily to the prurient interests or is patently offensive" – and found it to be constitutionally permissible as a regulation that is reasonably related to legitimate penological objectives. *Heard v. Bravo, et al.*, CV-13-1236 KG/WPL, Order, [Doc. 110], at 6-7.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although the burden of showing the absence of a genuine issue of material fact is upon the moving party, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party makes this showing only by presenting "facts such that a reasonable jury could find in [its] favor." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

## ARGUMENT AND AUTHORITIES

**I. <u>Section 1983 Personal Involvement.</u>**

Section 1983 creates a civil action for damages under federal law against any person acting under color of state law who violates the Constitution. 42 U.S.C. § 1983. To state a viable claim under § 1983 against Warden Frawner and/or MTC, Plaintiff must allege some personal involvement by Warden Frawner or MTC in the alleged constitutional violations. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "[A] plaintiff must plead that each . . . defendant, through the . . . individual['s own] actions, has violated the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 676). The elements necessary to establish a § 1983 violation "will vary with the constitutional provision at issue." *Iqbal*, 556 U.S. at 676. "Thus, when a plaintiff sues an official . . . under . . . § 1983 for conduct 'arising from . . . her [supervisory] responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of [her] own conduct and state of mind did so as well." *Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 556 U.S. at 677). In the Tenth Circuit, "§ 1983 allows a plaintiff to impose liability upon a defendant supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement . . . of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Id.* at 1199 (quoting 42 U.S.C. § 1983).

Plaintiff's Complaint [Docs. 1, 9] names Warden Frawner and MTC as defendants, but contains no allegations against them. (*See generally* Complaint [Docs. 1, 9].) In the absence of

6

any factual allegations demonstrating personal involvement of either Warden Frawner or MTC, dismissal with prejudice is warranted.

## II. CD-151201(E)(6)(e) is Reasonably Related to Legitimate Penological Interests.

A prisoner has a constitutionally protected right to correspond with people outside of prison. *Turner v. Safley*, 482 U.S. 78, 84 (1987). However, this right is qualified and subject to the concerns of prison safety and security. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). Prison officials have great latitude, given the security concerns present within a prison, to regulate incoming mail. *Turner*, 482 U.S. at 84-85. "'When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Gee*, 627 F.3d at 1187 (quoting *Turner*, 482 U.S. at 89). "Where the regulations at issue concern the entry of materials into the prison…a regulation which gives prison authorities broad discretion is appropriate." *Thornburgh v. Abbott*, 490 U.S. 401, 416, 109 S. Ct. 1874, 1883 (1989); *see also Al-Owhali v. Holder*, 687 F.3d 1236, 1242 (10th Cir. 2012) (acknowledging that a prison warden has "broad discretion to limit incoming information."). Accordingly, censorship of prisoners' incoming mail is permissible if it is "'reasonably related to legitimate penological interests.'" *Smith*, 899 F.2d at 944 (quoting *Turner*, 482 U.S. at 89).

To uphold a regulation as reasonable, the Court must: 1) determine that the regulation is rationally connected with the legitimate governmental interest used to justify it; 2) evaluate whether alternative means of exercising the burdened right remain available to prisoners; 3) consider the impact an accommodation of the constitutional right will have on guards, other inmates, and prison resources; and 4) determine if there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89-91.

The Supreme Court has recognized that hardback books create "an obvious security problem" because they are "difficult to search effectively," yet they are "especially serviceable for smuggling

contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings." *Bell v. Wolfish*, 441 U.S. 520, 550-51 (1979). Expanding on *Bell*, the Tenth Circuit has upheld a rule that only allowed inmates to obtain paperback books from the jail library and, with official permission, from the publisher. *Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1158-59 (10th Cir. 2007). There, the Tenth Circuit held that the rule was rationally related to the legitimate objective of prison security in that it prevented contraband from being smuggled into the jail. *Id*. at 1158. Similarly, other circuits have upheld publisher-only rules regarding hardback and paperback books, newspapers, and magazines. *See id.* (citing cases omitted).

The NMCD and OCPF policies limiting the manner in which inmates can obtain hardbound books is aimed at protecting the prison environment, including the safety of guards and inmates. (Undisputed Material Fact ("UMF") Nos. 10-13.) Protecting the good order and discipline of a prison is a legitimate governmental interest. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). Therefore, the Court should find that limiting incoming hardback books is rationally related to furthering this interest.

The NMCD and OCPF policies banning sexually explicit materials – including as female(s) partially or totally nude and/or posed in a sexually explicit position, nudity, pornography, and obscene materials that "appeals primarily to the prurient interests or is patently offensive" – are also constitutional. *See Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1156 (10th Cir. 2007) (A "jail's ban on inmate access to 'sexually explicit material' . . . is expressly aimed at advancing jail security and . . . also protects the safety of jail personnel and other inmates."). Indeed, in Plaintiff's pending lawsuit against the Guadalupe County Correctional Facility, the Honorable Kenneth Gonzales has already analyzed CD-151201(E)(6)(c) – which prohibits obscene material that "appeals primarily to the prurient interests or is patently offensive" – and found it to be constitutionally permissible as a regulation that is reasonably related to legitimate penological objectives. (UMF No. 21.) As such,

8

the ban on "[p]ublications containing photographs of female(s) partially or totally nude or posed in a sexually explicit position" – which is another way of describing obscene material – is also constitutional. CD-151201(E)(6)(e). This ban on inmate access to sexually explicit materials is expressly aimed at advancing jail security and protects the safety of jail personnel and other inmates. (UMF Nos. 14-15.) Prison security and safety are legitimate governmental objectives. *See Thornburgh,* 490 U.S. at 415 (prison security is a legitimate governmental purpose "central to all other corrections goals") (quotations omitted); *Mauro v. Arpaio,* 188 F.3d 1054, 1059 (9th Cir. 1999) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular . . . is legitimate."). The bans are rationally related to these objectives. Therefore, the Court should find that limiting incoming material on the basis of obscenity, including photos of nude females or females posed in a sexually explicit manner, is rationally related to furthering this interest.

Plaintiff claims that these policies banning sexually explicit materials are unconstitutional because he has purportedly experienced differing determinations of obscenity with regard to a photograph that was in color and the same photograph that was in black and white. (Complaint [Doc. 1], 14.) OCPF does not have the impermissible color photograph or any evidence to substantiate Plaintiff's representation that a similar color photograph was rejected. (Ex. 1, Martinez Aff., ¶ 22.) OCPF also has no evidence substantiating Plaintiff's claim that, during his incarceration at OCPF, he received the black and white photograph [Doc. 28] through the mail. (Ex. 1, Martinez Aff., ¶ 23.) Even if Plaintiff has evidence that he obtained the black and white photograph through the mail, as opposed to from another prisoner, etc. it should not have been allowed. (*Id.*) It was likely an oversight. (*Id.*) Still, even if the photograph was properly deemed appropriate – it was not – OCPF is unaware of any authority suggesting that different determinations regarding these photographs is in any way determinative of the First Amendment

issue.  "[P]rison officials must be accorded latitude in the administration of prison affairs" including regulating their facilities on the basis of safety concerns.  *Black v. Warden, United States Penitentiary*, 467 F.2d 202, 204 (10th Cir. 1972) (citing *Cruz v. Beto*, 405 U.S. 319 (1972).  Simply because it is possible that different OCPF personnel reasonably came to different conclusions about this photograph does not make the NMCD and OCPF policies unconstitutional.

Further, despite the ban on sexually explicit materials, OCPF regulations allow a broad range of publications to enter the facility.  (*See* Complaint [Doc. 1], 8 (Plaintiff representing the OCPF library has books that inmates can check out); (UMF Nos. 9, 12); *see also Thornburgh,* 490 U.S. at 418 ("As the regulations at issue … permit a broad range of publications to be sent, received, and read, [the second *Turner* factor] is clearly satisfied.").  Plaintiff, and other similarly situated prisoners, remain able to correspond with individuals outside of prison.  Limiting the incoming material for the reasons noted above does not so impinge this right.  Therefore, this second *Turner* factor cuts in favor of upholding the regulations.

To allow inmates to possess sexually explicit materials would have a significant, adverse, impact on the safety and security of prison personnel and other inmates.  (UMF Nos. 14-20.)  Therefore, in comport with the third *Turner* factor -- the impact an accommodation of the constitutional right will have on guards, other inmates, and prison resources -- these regulations weigh in favor of upholding the regulations.

Finally, the Court must consider whether there is a readily available alternative to the regulations.  Here, there is not.  Neither a blanket prohibition on sexually explicit materials nor a prohibition against receiving hardback books through the mail has a readily available alternative, and the absence of such an alternative is evidence of the regulation's reasonableness.  *Turner*, 482 U.S. at 90-91.  Indeed, OCPF is unaware of any alternative that would allow inmates access to obscene

publications or unfettered access to hardbound books without significantly and adversely affecting the interests identified above while at the same time imposing *de minimis* cost to valid penological interests. (UMF No. 20.) Therefore, the Court should find that CD-151201(E)(6)(e) does not rise to the level of a constitutional violation and that it is reasonably related to legitimate penological objectives. Summary judgment dismissing Plaintiff's claims with prejudice is, thus, necessary and proper.

## CONCLUSION

Dismissal of Warden Frawner and MTC from this matter is necessary and proper. Plaintiff has failed to include any factual allegations against them. (*See generally* Complaint [Docs. 1, 9].) In the absence of any factual allegations demonstrating personal involvement of either Warden Frawner or MTC, they should be dismissed with prejudice. In addition, CD-151201(E)(6)(e) is expressly aimed at advancing jail security and protect the safety of jail personnel and other inmates. Therefore, the Court should uphold it as constitutional; Plaintiff's lawsuit should be dismissed with prejudice.

Respectfully submitted,

KELEHER & MCLEOD, P.A.

By: */s/ Christina Muscarella Gooch*
    Kurt Wihl
    Christina Muscarella Gooch
    P. O. Box AA
    Albuquerque, NM 87103
    Telephone: (505) 346-4646
    Facsimile: (505) 346-1370
    tmg@keleher-law.com

I HEREBY CERTIFY that on April 25, 2016, I filed the foregoing pleading electronically through the CM/ECF System, which caused counsel of record to be served by electronic means. I also certify that I mailed the foregoing pleading to Plaintiff as follows:

John Heard 64679
Otero County Prison Facility
10 McGregor Range Rd
Chaparral, NM 88081

*/s/ Christina Muscarella Gooch*
Christina Muscarella Gooch

4836-1155-7679, v. 1