**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOHN HEARD,

      **Plaintiff,**

v.                                          **No. 15-cv-0516 MCA/SMV**

GREGG MARCANTEL,
JAMES FRAWNER, and
MTC CORPORATION,

      **Defendants.**

**MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
AND GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO AMEND**

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and

Recommended Disposition ("PF&RD") [Doc. 75], filed November 14, 2016.  On reference by

the undersigned [Doc. 4], the Honorable Stephan M. Vidmar, United States Magistrate Judge,

recommended granting in part and denying in part Defendants' motions for summary judgment.

[Doc. 75].  Specifically, he recommended that Defendants' motions be granted as to Plaintiff's

claim regarding Defendants' policy prohibiting inmates from receiving publications containing

nude or semi-nude photographs through the mail, but denied as to Plaintiff's claim regarding

Defendants' policy prohibiting inmates from receiving hardbound books through the mail.  *Id.*

Defendants objected to the portion of the PF&RD that recommended denying summary

judgment on the hardbound books claim.  [Docs. 77, 79].  Plaintiff did not object to the PF&RD,

nor did he respond to Defendants' objections; instead, after the objections deadline had passed,

Plaintiff submitted a supplemental filing in support of his claims.  [Doc. 84].  On de novo review of the portions of the PF&RD to which Defendants object, the Court will overrule the objections, adopt the PF&RD, and grant in part and deny in part Defendants' motions for summary judgment.

Further, the Court will deny as frivolous Plaintiff's request [Doc. 86] that summary judgment be entered in his favor based on Defendants' alleged refusal to respond to his settlement demand.

Finally, the Court will grant in part and deny in part Plaintiff's motion to amend his complaint [Doc. 43].  The Court will permit Plaintiff to proceed, at this stage, on his hardbound books claim only, against Defendant Marcantel in his official capacity for prospective relief and against Defendant MTC for prospective and monetary relief.

## I. Background

Plaintiff is incarcerated, appearing pro se, and proceeding *in forma pauperis*.  He has been imprisoned at Otero County Prison Facility ("OCPF") since July 24, 2013.  He complains that OCPF and New Mexico Corrections Department ("NMCD") mail policies prohibit him from receiving certain incoming mail, i.e., hardbound books and publications containing nude or semi-nude photographs.  [Doc. 1] at 14; [Doc. 9] at 1–2.

On June 17, 2015, Plaintiff filed a complaint under 42 U.S.C. § 1983 [Doc. 1], alleging that Defendants' policies violated his First Amendment rights.  Plaintiff named in his complaint Gregg Marcantel, NMCD Secretary of Corrections; James Frawner, former Warden of OCPF; and Management & Training Corporation ("MTC"), the private corporation that operates OCPF.

*Id.* at 1–3.   On September 2, 2015, Plaintiff filed a "Clarification on Original Complaint" [Doc. 9], which Judge Vidmar construed as a supplement to the complaint, *see* [Doc. 10] at 2. Defendant Marcantel answered on November 24, 2015.   [Doc. 19].   Defendants Frawner and MTC (collectively, "MTC Defendants") answered on December 22, 2015.     [Doc. 23]. Judge Vidmar ordered Defendants to submit a *Martinez* Report.   [Doc. 30].   Defendants Frawner and MTC filed their Report [Doc. 38] and a Motion for Summary Judgment [Doc. 39] on April 25, 2016.   Defendant Marcantel filed his Report [Doc. 42] on May 9, 2016.   Judge Vidmar construed Marcantel's Report as a motion for summary judgment.   [Doc. 75] at 1.   On May 26, 2016, Plaintiff responded to Defendants' *Martinez* Reports [Doc. 45] and filed several additional supporting documents.[1]   That same day, Plaintiff also filed a Motion to Amend Complaint [Doc. 43][2] and Motion to Stay Summary Judgment [Doc. 44].[3]   MTC Defendants replied in support of their motion and *Martinez* Report on July 8, 2016.   [Docs. 61, 62].   Defendant Marcantel replied in support of his *Martinez* Report on July 15, 2016.   [Doc. 64].   Plaintiff submitted numerous other filings supporting his complaint and raising additional claims.[4] Defendants responded to Plaintiff's filings.[5]

---

[1] *See* "Memorandum of Law" [Doc. 46], "Affidavit" [Doc. 47], "Affidavit for Plaintiff's Position on Count 1" [Doc. 48], "Second Affidavit" [Doc. 49], and "Statement in Support of Plaintiff's Position for Count 2" [Doc. 50].
[2] Judge Vidmar declined to rule on the motion at the time he issued his PF&RD.   He found that the outcome of Plaintiff's motion to amend would not affect his decision on summary judgment.   *See* [Doc. 75] at 5 n.5.
[3] Judge Vidmar denied Plaintiff's motion to stay in a separate order filed concurrently with the PF&RD.   *See* [Doc. 74].
[4] *See* "Affidavit" [Doc. 63], "Statement in Support of Plaintiff's Position for Count 1" [Doc. 68], and additional untitled document [Doc. 69].
[5] *See* "Defendant Marcantel's Response to 'Affidavit of John Heard'" [Doc. 66]; "[MTC] Defendants' Response to Plaintiff's Pleading Entitled 'Affidavit by John Heard'" [Doc. 67]; "[MTC] Defendants' Response to Plaintiff's Pleadings [Docs. 68 & 69]" [Doc. 71].

Judge Vidmar issued his PF&RD on November 14, 2016.  [Doc. 75].  He rejected Defendant Marcantel's qualified immunity defense because Plaintiff's complaint and amended complaint sought injunctive and declaratory relief only, and he rejected MTC Defendants' argument that the "personal involvement" requirement of § 1983 was not satisfied.[6]  *Id.* at 5–7. He recommended denying summary judgment on Plaintiff's claim regarding Defendants' policy prohibiting inmates from receiving hardbound books through the mail.  *Id.* at 7–19.  He recommended granting summary judgment in favor of Defendants on Plaintiff's claim regarding Defendants' policy prohibiting inmates from receiving publications containing nude or semi-nude photographs through the mail.  *Id.* at 19–26.  Finally, Judge Vidmar considered the additional injuries Plaintiff alleged in several other filings but declined to construe the filings as motions to amend the complaint, because he found it would be futile to do so.  *Id.* at 26–29.

### II. The Court will overrule Defendants' objections and adopt the Magistrate Judge's proposed findings and recommended disposition.

#### A. Summary Judgment Standard

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must support its request by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[6] Though not stated explicitly in the PF&RD, as discussed *infra,* the Court construes the claims against Defendant Frawner to be official-capacity, not individual-capacity, claims.  Official-capacity claims against a municipal official are, in effect, claims against the municipal entity itself.  Therefore, where a municipal entity (or, like MTC, a private entity acting under color of state law) is sued, an additional official-capacity claim against a municipal officer is redundant.  *See infra; Kentucky v. Graham*, 473 U.S. 159, 166–67 & 167 n.14 (1985).

4

affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials
. . . ." Fed. R. Civ. P. 56(c)(1)(A).

The movant has the initial burden of establishing that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323–24 (1986). If this burden is met, the non-movant must come forward
with specific facts, supported by admissible evidence, which demonstrate the presence of a
genuine issue for trial. *Id.* at 324. Although all facts are construed in favor of the non-movant,
the non-movant still has a responsibility to "go beyond the pleadings and designate specific facts
so as to make a showing sufficient to establish the existence of an element essential to [his] case
in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir.
2005) (alteration in original) (internal quotation marks omitted).

The Court liberally construes Plaintiff's filings because he is appearing pro se. Still, a
pro se non-movant must "identify specific facts that show the existence of a genuine issue of
material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal
quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact
that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180
(10th Cir. 2013).

In a suit brought by a pro se prisoner, a court may order the defendants to investigate the
plaintiff's claims and submit a report of that investigation, called a *Martinez* Report. *See Hall*,
935 F.2d at 1109; *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978). A court may use
the *Martinez* Report to grant summary judgment upon motion of the defendants. *Hall*, 935 F.2d

5

at 1009–13; *see also Celotex*, 477 U.S. at 326 (courts possess the authority to enter summary judgment sua sponte, so long as the losing party is on notice that she must come forward with all her evidence).

### B. Standard for Evaluating the Constitutionality of Prison Regulations

Prisoners are entitled to the protections of the Constitution.  *Turner v. Safley*, 482 U.S. 78, 84 (1987).  Among these protections is the First Amendment right of a prisoner to correspond with others outside the prison.  *See id.* at 93 (evaluating prison regulation restricting correspondence between inmates at different prison facilities); *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (considering prisoner's claims under the First Amendment, "in particular his right to communicate with persons outside the prison").  Inmates have a right "to receive information while in prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004).  These rights, however, may be cabined by corrections policies implemented in the interests of safety and security.  *Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989).  Indeed, "[p]risoners' rights may be restricted in ways that 'would raise grave First Amendment concerns outside the prison context.'"  *Gee*, 627 F.3d at 1187 (quoting *Thornburgh*, 490 U.S. at 407).  In evaluating the constitutionality of a prison regulation that "'impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'"  *Id.* (quoting *Turner*, 482 U.S. at 89).

In *Turner v. Safley*, the Supreme Court set out four factors to be used to evaluate the reasonableness of a prison regulation that infringes on constitutionally protected rights.  482 U.S. at 89–90.  First, "there must be a 'valid, rational connection' between the prison regulation and

the legitimate governmental interest put forward to justify it." *Id.* at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). The regulation at issue must not be "arbitrary" or "irrational." *Id.* at 90. Second, courts must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* Third, courts must weigh "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Where accommodating the asserted right will strain the prison's resources or have some other "significant 'ripple effect,'" courts should be particularly deferential to the discretion of prison officials. *Id.* Finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* (citing *Block*, 468 U.S. at 587). However, prison regulations need not satisfy the stringent "least restrictive alternative" test and courts need not consider "every conceivable alternative method"; rather, the court should consider whether "obvious, easy alternatives" exist that would accommodate the right "at *de minimis* cost to valid penological interests." *Id.* at 90–91 (internal quotation marks omitted).

A *Turner* analysis "requires close examination of the facts." *Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007). Courts must consider the facts "on a case-by-case basis" to determine whether a prison regulation's impingement on an inmate's First Amendment rights is justified. *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). While defendants must set forth a legitimate penological interest reasonably related to the regulation at issue, the plaintiff prisoner bears the ultimate burden of disproving the validity of the regulations. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The burden rests on the plaintiff "to set forth 'specific

facts' that, in light of the deference that courts must show to the prison officials, could warrant a

determination" in the prisoner's favor. *Beard v. Banks*, 548 U.S. 521, 525 (2006) (quoting

Fed. R. Civ. P. 56(e); *Overton*, 539 U.S. at 132).

Courts must be mindful of the "institutional objectives" served by the regulations at issue

and the "measure of judicial deference owed" to prison officials in their implementation of such

objectives. *Pell v. Procunier*, 417 U.S. 817, 827 (1974); *see also Beard*, 548 U.S. at 528

("[C]ourts owe 'substantial deference to the professional judgment of prison administrators.'"

(quoting *Overton*, 539 U.S. at 132)).  The *Turner* standard "is necessary if 'prison administrators

. . ., and not the courts, [are] to make the difficult judgments concerning institutional

operations.'"  *Turner*, 482 U.S. at 89 (quoting *Jones v. North Carolina Prisoners' Labor Union,

Inc.*, 433 U.S. 119, 128 (1977)).  On summary judgment, the plaintiff must do more than just

"disagree with the views expressed" by prison officials in affidavits; rather, the prisoner "must

point to evidence creating genuine factual disputes that undermine those views." *Wardell v.

Duncan*, 470 F.3d 954, 960 (10th Cir. 2006).  Courts "must distinguish between evidence of

disputed facts and disputed matters of professional judgment," the latter of which requires

judicial deference. *Beard*, 548 U.S. at 530.

<u>C. Judge Vidmar's PF&RD</u>

*1. Judge Vidmar recommended that summary judgment be denied as to
Plaintiff's claim regarding hardbound books.*

Plaintiff claimed that Defendants' policy prohibiting inmates from receiving hardbound

books through the mail violated his First Amendment rights.  [Doc. 75] at 12.  Defendants did

not deny that the policy prohibits inmates from receiving hardbound books through the mail. *Id.*

Analyzing the *Turner* factors, Judge Vidmar found that a genuine issue of material fact existed as to whether Plaintiff had sufficient alternative means of accessing reading material, and he therefore recommended that summary judgment be denied on this claim.  *Id.* at 12–19.

Turning to the first *Turner* factor, Judge Vidmar found that the policy was rationally related to Defendants' asserted penological interests in safety and security.  *Id.* at 12–14. Defendants, he noted, had asserted that hardbound books could be used to conceal contraband. *Id.* at 12–13 (citing [Doc. 38-1] at 2; [Doc. 42-2] at 28).  Limiting the hardbound books coming into the prison "'reduces the time and resources necessary to inspect and search'" inmates' property and "'lessens the administrative burden'" on prison staff.  *Id.* (quoting [Doc. 38-1] at 2–3).  Defendants also raised concerns that hardbound books could be fashioned into weapons.  *Id.* (citing [Doc. 42-2] at 28).  Judge Vidmar noted that the Supreme Court and the Tenth Circuit have held that safety and security are legitimate penological interests and that hardbound books may create safety and security problems.  *Id.* at 13 (citing *Bell v. Wolfish*, 441 U.S. 520, 549–50 (1979) (upholding jail regulation limiting inmates' acquisition of hardbound books to those mailed directly from publishers or vendors, because hardbound books from other outside sources create "an obvious security problem"); *Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1156–57 (10th Cir. 2007) (upholding jail's prohibition on books received from outside the jail, except paperback books ordered directly from a publisher with staff approval, given the jail's safety and security interests in regulating incoming materials)).

Plaintiff argued that the fact that inmates could acquire hardbound books through other avenues (e.g., the library) belied Defendants' asserted safety and security rationale.  *Id.* at 14

9

(citing [Doc. 1] at 8–10; [Doc. 45] at 2–4).  Judge Vidmar acknowledged but ultimately was not persuaded by this argument.  *Id.*  He found that courts must defer to the professional judgment of prison officials on matters of policy.  *Id.* (citing *Beard*, 548 U.S. at 530).  While acknowledging that Defendants' asserted justifications for the regulation were diluted by the apparent access to some hardbound books at OCPF, Judge Vidmar found that *Turner* requires courts to evaluate only whether the policy bears a rational relationship to the government interest.  *Id.*

Judge Vidmar next considered the second *Turner* factor: the alternative means, if any, by which the prisoner may exercise the burdened right.  *Id.* at 15–18.  This prong is satisfied where the regulatory scheme "'permit[s] a broad range of publications to be sent, received, and read.'"  *Id.* at 15 (quoting *Thornburgh*, 490 U.S. at 418).  "'[A]lternatives need not be ideal; they need only be available.'"  *Id.* (quoting *Jones*, 503 F.3d at 1153).

Judge Vidmar found that the parties disputed Plaintiff's alternative means of access to reading material.  *Id.* at 15–16.  The parties agreed that prisoners at OCPF had access to the prison's library as well as an inter-library loan program, though neither party alleged facts regarding the size or scope of the library or the degree of access enjoyed by prisoners.  *Id.* (citing [Doc. 1] at 7–8; [Doc. 38-1] at 2).  Nor did the parties dispute that prisoners at OCPF could order paperback books from two (and only two) pre-approved vendors: Edward R. Hamilton Booksellers, offering by Defendants' count approximately 20,000 paperback books, and Christian Book Distributors, offering more than 100,000 paperback books, many but not all of which relate to Christian themes.  *Id.* at 16 (citing [Doc. 67] at 4–5).  However, the parties disagreed about whether Plaintiff could actually order and obtain paperback books from

10

publishers with the warden's approval.  *Id.*  Defendants contended that he could.  *Id.* (citing [Doc. 38-1] at 1–2; [Doc. 67] at 2).   Plaintiff contended, however, that he effectively was blocked from receiving any book from a publisher, whether hardbound or paperback, stating, "'the warden *will not* approve *any* book from a publisher.'"[7]  *Id.* (quoting [Doc. 68] at 6).  Based on Plaintiff's declaration, and construing all disputed facts in the light most favorable to Plaintiff, Judge Vidmar assumed for the purposes of his analysis that Plaintiff was unable to acquire books directly from publishers (whether hardbound or paperback).  *Id.*

Judge Vidmar found that the second *Turner* factor weighed against Defendants.  *Id.* at 16–18.  He found that the restriction in this case went further than that at issue in *Jones*, where a "publisher only" rule was operative.   The policy in *Jones* generally prohibited inmates from receiving books through the mail but permitted inmates to receive books ordered directly from a publisher.  *Id.* at 16–17 (citing *Jones*, 503 F.3d at 1158–59).  In the limited instances where the Supreme Court or Tenth Circuit upheld more restrictive policies, he found, the prison facilities had asserted more specialized safety or security interests.  *Id.* at 17 (citing *Beard*, 548 U.S. at 525 (policy applied to prisoners in a long-term segregation unit deemed to be "specially dangerous and recalcitrant"); *Grissom v. Werholtz*, 524 F. App'x 467, 471–72 (10th Cir. 2013) (policies applied to inmates in administrative segregation and to inmate with history of possessing dangerous contraband)).   Nor did he find an analogous case from another circuit upholding a prison regulation more restrictive than a publisher only rule.  *Id.* at 17–18.

---

[7] In various separate filings, Plaintiff described multiple attempts to obtain pre-approval to order paperback books from the publisher, none of which was successful.  [Doc. 75] at 16 (citing [Doc. 63] at 1–2; [Doc. 68] at 5–6; [Doc. 69] at 1).

While he found that the remaining *Turner* factors weighed in Defendants' favor, Judge Vidmar ultimately recommended that the Court deny summary judgment on this claim. *Id.* at 18–19.  He found that Plaintiff supplied evidence that he was effectively prohibited from receiving any book, whether hardbound or paperback, from a publisher.  Judge Vidmar therefore assumed, taking all facts in the light most favorable to Plaintiff, that Plaintiff had no access to reading material from publishers.  He further found that Defendants had cited no analogous case in which a court upheld so restrictive a policy as the one in this case.  Given the material factual dispute as to the second *Turner* factor, Judge Vidmar found that Defendants had failed to meet their burden to show that they were entitled to judgment as a matter of law.  *Id.* at 19.

If Defendants had provided evidence that Plaintiff had actually received paperback books from publishers, for example, or if Defendants had provided specific evidence of the size and accessibility of the library and inter-library loan system, the scales may have tipped in Defendants' favor.  *Id.*  Likewise, if Defendants had cited a case upholding a restriction of such a degree—a restriction that went beyond the publisher-only rule in *Jones*—the outcome might have been different.  *Id.*  They did not, however, and Judge Vidmar found Defendants were not entitled to summary judgment on this claim.

### 2. Judge Vidmar recommended that summary judgment be granted as to Plaintiff's claim regarding publications containing nudity or sexually explicit materials

Plaintiff also claimed that Defendants' policy prohibiting inmates from receiving "[p]ublications containing photographs of female(s) partially or totally nude and/or posed in a sexually explicit position," violated his First Amendment rights.  *Id.* at 19.  He argued that the policy could not be supported by any legitimate penological interest, was unconstitutionally

12

vague, and was not content neutral.  *Id.*  Judge Vidmar found that Defendants were entitled to summary judgment on this claim.  *Id.* at 25–26.

Judge Vidmar found that all of the *Turner* factors weighed in favor of Defendants on this claim.  *Id.* at 20–23.  He found that Defendants' asserted interests in restricting the materials— protecting institutional security, discouraging sexual harassment among guards and inmates, and not impeding the prison's efforts to rehabilitate its sex offender population—were rationally related to the restriction.  *Id.* at 20–21 (citing [Doc. 38-1] at 3; [Doc. 42] at 4–5; [Doc. 42-2] at 26–27).  He further found that the class of content restricted was specifically targeted and did not impinge on inmates' access to most types of publications.  *Id.* at 22.  He found that the third and fourth *Turner* factors also weighed in Defendants' favor, given the difficulty of accommodating the right and the administrative burden associated with any alternative to the existing policy.  *Id.* at 22–23.  Judge Vidmar rejected Plaintiff's argument that the regulation was unconstitutionally vague, noting that any inquiry into the specificity of a policy's language was governed by the *Turner* analysis.  *Id.* at 23–24 (citing *Jones*, 503 F.3d at 1155–56 (rejecting party's reliance on non-prison First Amendment cases about the vagueness doctrine and analyzing jail policies instead under *Turner*)).  Finally, he found unavailing Plaintiff's argument regarding the content neutrality of the policy.  *Id.* at 24–25 (citing *Thornburgh*, 490 U.S. at 415–16 (holding that a regulation is "neutral" in the *Turner* sense where "prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security")).

Finding no genuine issue of material fact, and that no reasonable jury could find that the policy in question was not reasonably related to Defendants' legitimate interests in prohibiting

13

sexual harassment and promoting rehabilitation, Judge Vidmar recommended that the Court

grant summary judgment on this claim.  *Id.* at 25–26.[8]

### D. Standard of Review for Objections to Magistrate Judge's PF&RD

A district judge must "make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made."  28 U.S.C.

§ 636(b)(1).  "[O]bjections to the magistrate judge's report must be both timely and specific to

preserve an issue for de novo review by the district court[.]"  *United States v. 2121 E. 30th St.*,

73 F.3d 1057, 1060 (10th Cir. 1996).  To preserve an issue, a party's objections to a PF&RD

must be "sufficiently specific to focus the district court's attention on the factual and legal issues

that are truly in dispute."  *Id.*  Moreover, "theories raised for the first time in objections to the

magistrate judge's report are deemed waived."  *United States v. Garfinkle*, 261 F.3d 1030, 1030–

31 (10th Cir. 2001).

### E. Analysis

Defendants object to Judge Vidmar's recommendation that summary judgment be denied

as to Plaintiff's hardbound book claim.  Specifically, Defendants object to Judge Vidmar's

analysis of the second prong of the *Turner* analysis.  That is, they argue that Judge Vidmar erred

in finding that there is a genuine issue of material fact as to Plaintiff's alternative means of

accessing reading material.  Defendants do not object to any other portion of the PF&RD.

---

[8] Judge Vidmar went on to consider several additional allegations made by Plaintiff after he filed his complaint and amended complaint.  [Doc. 75] at 26–29.  Judge Vidmar declined to construe the additional allegations as motions to amend the complaint because he found it would be futile to do so.  *Id.* at 26.  The allegations concerned Plaintiff's access to the photocopier, *id.* at 26–28, Plaintiff's access to paperback books, *id.* at 28–29, and Warden Martinez's affidavit, *id.* at 29.  Neither party objected to Judge Vidmar's findings on these additional allegations of injury.

Plaintiff does not object to any portion of the PF&RD, nor did he respond to Defendants' objections.[9]

### 1. Plaintiff provided evidence of a material factual dispute as to his alternative means of obtaining reading material.

Defendants assert that Plaintiff has not shown that he lacks access to paperback books from publishers and, therefore, there is no genuine factual dispute on this point. Defendant Marcantel, in his objections, argues that Plaintiff "is indeed permitted to receive paperback (*i.e.*, softbound) books from publishers" because Plaintiff can order paperback books from the two pre-approved vendors, Edward R. Hamilton and Christian Book Distributors. [Doc. 79] at 1–2. Defendant Marcantel conflates "vendors" and "publishers." This argument is unavailing. *See, e.g.*, [Doc. 77] at 6–8 (distinguishing vendors from publishers).

MTC Defendants provide a different line of argument. [Doc. 77] at 8–12. They argue that Plaintiff's statements concerning his inability to obtain paperback books from publishers should not be considered as evidence because these alleged denials were unripe for review. *Id.* at 8–9, 11. They further argue that Plaintiff's evidence failed to demonstrate that he had been denied any book from a publisher. *Id.* at 9–11. Finally, MTC Defendants assert that they informed the Court that Plaintiff's orders *were* being approved. *Id.* at 10–11.

A party "asserting that a fact cannot be or is genuinely disputed" may do so by citing to materials "that would be admissible in evidence." Fed. R. Civ. P. 56(c)(1)–(2). An affidavit or

---

[9] After the deadline for objecting to the PF&RD passed, Plaintiff filed a "Suppl[e]mental Affidavit" [Doc. 84]. As to his claim regarding the policy on hardbound books, Plaintiff reasserted his earlier arguments. *Id.* at 1–3. As to his claim regarding the policy on publications containing nudity or sexually explicit materials, Plaintiff noted only that his other lawsuit, *Heard v. Bravo*, 13-cv-1236 KG/WPL (D.N.M.), in which he challenged another institution's similar obscenity policy, is now on appeal to the Tenth Circuit. [Doc. 84] at 3.

declaration may be used to oppose a motion where the affidavit or declaration "[is] made on personal knowledge," "set[s] out facts that would be admissible in evidence," and "show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Plaintiff's filings [Docs. 63, 68, 69] are declarations as contemplated by Rule 56. Plaintiff apparently concedes that OCPF policy permits inmates to order paperback books from publishers "with the warden's approval." However, Plaintiff alleges that this policy is illusory because the warden will not approve any book by any publisher. [Doc. 68] at 6. Plaintiff asserts that he has tried to purchase paperback books on multiple occasions, and none of his requests has been granted.[10] That testimony is sufficient to create a genuine issue of fact. Plaintiff need not have, as Defendants suggest, attached receipts of his orders; Plaintiff's declarations adequately describe his capacity, or lack thereof, to obtain books from publishers.

It is true that Plaintiff has not exhausted the grievance process with respect to these orders. *See* [Doc. 75] at 28–29. However, the fact that Plaintiff's claims are unripe for judicial review and could not survive as *causes of action* does not render them inadmissible as *evidence* on summary judgment review. Plaintiff testified that, as a practical matter, he is unable to acquire books (paperback or hardcover) directly from publishers. This evidence is both admissible and relevant to a material issue of fact, i.e., Plaintiff's alternative means of obtaining reading material.

Defendants' contention that Plaintiff's requests are, in fact, being approved does not compel a different result. Defendants do not affirm that the requests were indeed approved, or

---

[10] One request has been denied and is pending administrative review. *See* [Doc. 63] at 1–2. The other requests have received no response. *See* [Doc. 68] at 5; [Doc. 69] at 1.

that Plaintiff has actually received any of the books he has ordered. Defendants' conditional assurances linger in the air without evidentiary foundation. *See* [Doc. 77] at 9–11. At base, this assertion only reinforces the existence of a factual dispute between the parties. Defendants state that Plaintiff's requests are being approved; Plaintiff maintains that the warden will not approve any such request. This factual dispute is material to Plaintiff's claim regarding Defendants' hardbound book policy because, in the light most favorable to Plaintiff, the Court must presume that Plaintiff has no access to books from publishers. Defendants supply no case law to show that, on these facts, they are entitled to judgment as a matter of law.

### 2. The restrictions on publications in this case are more restrictive than those at issue in Jones.

MTC Defendants assert that Plaintiff's access to reading material is broader than that upheld by the Tenth Circuit in *Jones v. Salt Lake County*. *Id.* at 6–8. However, as Judge Vidmar set out in the PF&RD, several important details distinguish the present case from *Jones* and preclude easy resolution thereunder. In *Jones*, there was evidence that the jail's library "contain[ed] thousands of books." 503 F.3d at 1156. Not so in this case, where the record does not show the scope of the OCPF library and inter-library loan or degree of access enjoyed by inmates.[11] Further, and most importantly, in *Jones*, a jail official testified that when an inmate sought permission to order a paperback book from a publisher (as per an unwritten but operative policy), the official "approved every request that did not pose a threat to another person." *Id.*

---

[11] In an affidavit accompanying Defendant Marcantel's objections to Judge Vidmar's PF&RD, Jerry Roark, Director of the Adult Prisons Division of NMCD, stated that the library at OCPF is "large" and suggested that it is larger than other New Mexico prison libraries. [Doc. 79] at 9. With no further context, though, this statement does not significantly aide the Court in evaluating the second *Turner* factor and Plaintiff's alternative means of access to reading material. Similarly, that Plaintiff received two of the books he sought through inter-library loan does not sufficiently illustrate the size of the library or degree of Plaintiff's access thereto.

at 1157. Though Defendants in this case purport to abide by an analogous policy, whether the policy is in fact operative remains, as discussed above, a matter of factual dispute. The alternative means available to Plaintiff are more limited than those available to inmates in *Jones*.[12]

*3. The additional case law cited by Defendant Marcantel*
*does not compel a different result.*

Defendant Marcantel further asserts that, assuming Plaintiff's access were limited to the two pre-approved vendors and the library, this level of access suffices to satisfy the second *Turner* prong and compels an award of summary judgment in favor of Defendants. [Doc. 79] at 2–4. He relies on several cases, almost all of which are unpublished and none of which is binding on this Court. *Id.* The Court finds these cases unpersuasive.

Defendant Marcantel cites *Payne v. Friel*, an unpublished decision from the District of Utah, which upheld a prison policy allowing inmates to purchase reading material[13] from only two vendors, Edward Hamilton and Barnes and Noble. 2007 WL 1100420, at *7–8 (D. Utah Apr. 10, 2007) (unpublished), *rev'd in part on other grounds*, 266 F. App'x 724 (10th Cir. 2008).[14] Defendant Marcantel argues that the restrictions on reading material upheld in *Payne*

---

[12] In addition, the jail in *Jones* had a program by which books could be purchased through Barnes and Noble and donated (as property of the jail) to a specific prisoner. 503 F.3d at 1157. MTC Defendants contend that Defendants' vendor policy is broader than the *Jones* vendor policy because the latter is only a donation program. [Doc. 77] at 7. This argument is not persuasive. First, though technically a donation program, the vendor policy in *Jones* appears to have operated like a traditional publisher/vendor policy, except that the books became property of the jail, not the inmate. *See* 503 F.3d at 1157. Second, the vendor in *Jones* was Barnes and Noble, a large, well-known vendor of considerable size. Finally, as described above, the thrust of distinction between *Jones* and the present case is the inmates' ability, or lack thereof, to order (paperback) books from publishers.

[13] As Defendant Marcantel notes, it is unclear whether prisoners could purchase both hardbound and paperback books from these vendors or whether they were limited to paperback books only.

[14] In an unpublished decision, the Tenth Circuit affirmed, without analysis, the district court's holding on the prisoner's First Amendment claim.

are analogous to the restrictions in this case.  [Doc. 79] at 2–3.  He further asserts that the reasoning of the District of Utah, that the plaintiff did not allege "that he ha[d] been denied a specific book which he would otherwise be allowed to possess if not for the approved vendor policy," can be extended to the present case, because the approved vendors offer books on the topic Plaintiff sought to acquire directly from the publisher.  *Id.* at 3 (internal quotation marks omitted).

A few key facts distinguish *Payne* from the present case.  First, one of the vendors to which prisoners had access in *Payne* was Barnes and Noble.  Surely Defendants recognize that, for purposes of the *Turner* analysis, there is a meaningful distinction between a pre-approved vendor like Barnes and Noble and one like Edward Hamilton or Christian Book Distributors.[15] Moreover, the plaintiff in *Payne* was not actually arguing that he lacked sufficient access to reading material but rather that "he could obtain certain books cheaper if able to purchase from vendors other than those approved by the prison."  2007 WL 1100420, at *8.  Unlike Plaintiff in this case, there apparently was no assertion that the availability of reading material was unconstitutionally deficient—only that the restrictions rendered the publications more costly.

Other cases cited by Defendant Marcantel concern prison policies permitting broader access than Plaintiff alleges in this case.  In *Herrick v. Strong*, 2016 WL 4755683 (W.D. Wash. Aug. 22, 2016), the court upheld a policy that permitted book orders from only four pre-approved vendors.  *Id.* at *15.  However, the court also noted that the policy included a "'purchaser exception' or 'vendor exception,'" which arguably permitted the plaintiff to order

---

[15] As discussed *supra*, Edward Hamilton and Christina Book Distributors, the vendors to which Plaintiff currently has access, are limited in size and scope.

books from a general-purpose vendor like Barnes and Noble or Amazon.  *Id.*  Defendant Marcantel also cites to *Walker v. Caledron*, 1997 WL 703774 (N.D. Cal. Oct. 31, 1997) (unpublished), for support.  *See* [Doc. 79] at 4.  Although the policy at issue in that case "had only one book vendor on the prison's pre-approved list," as Defendant Marcantel argues, that vendor was Barnes and Noble, which Defendant Marcantel fails to acknowledge.  *Id.*; *Walker*, 1997 WL 703774, at *1.  The policy also permitted inmates to order books from other "authentic sources" if the approved vendor did not carry the book and the inmate obtained prior approval. 1997 WL 703774, at *1.

Finally, Defendant Marcantel cites to a case in which a district court upheld a policy under which prisoners were permitted to order books only from the same two vendors as currently allowed at OCPF.  *Williams v. Maynard*, 2015 WL 1138263 (D. Md. Mar. 12, 2015) (unpublished).  In that case, in which the prisoner primarily was challenging his access to legal materials while stationed in a more restrictive housing unit of the maximum security prison, the court relied at least in part on evidence that the prisoner had access to materials via the library. *Id.* at *3.  The library, the court found (based on a reference list of required materials for Maryland prison libraries supplied by the defendant), offered "extensive materials" to prisoners, as well as a state-run document delivery service.[16]  *Id.*  The defendants had also presented evidence of the "extensive" legal materials that the plaintiff had requested *and received*.  *Id.*  In sum, this unpublished, non-binding opinion is factually distinct from the present case and does not sway the Court.

---

[16] The court also noted that the prison had computers in the main library and general population housing units; however, the plaintiff did not have access to the computers because he was housed in an administrative segregation unit.  2015 WL 1138263, at *1.

20

<u>F. Conclusion</u>

Taking the record as it currently stands and in the light most favorable to Plaintiff, a reasonable jury could find that, considering the limited alternative means available to access reading material, the hardbound book policy denies Plaintiff sufficient access to reading material in violation of his First Amendment right.  Defendants have failed to demonstrate the absence of a genuine issue of material fact on this claim.  Evidence that Plaintiff has ordered *and received* paperback books from publishers might swing the analysis in the opposite direction.  However, because that factual dispute remains, summary judgment on this claim is inappropriate at this stage.  The Court is sensitive to Defendant Marcantel's assertion that permitting hardbound books to come into prisons poses a safety and security threat.  *See* [Doc. 79] at 5–6.  The Court's holding does not mean that Defendants must permit prisoners to receive hardbound books through the mail.  It means only that a genuine issue of material fact remains as to whether Defendants provide Plaintiff sufficient alternative means of obtaining reading material to satisfy the *Turner* standard.  The Court will deny Defendants' motion with respect to Plaintiff's hardbound books claim.

The Court will grant Defendants' motion with respect to Plaintiff's claim regarding Defendants' policy prohibiting prisoners from receiving publications containing nude or semi-nude photographs.

### III. The Court will deny Plaintiff's request for summary judgment based on Defendants' refusal to respond to his settlement demand.

On February 13, 2017, Plaintiff filed an untitled document requesting that the Court grant summary judgment in his favor because Defendants did not respond to his settlement demand.

[Doc. 86].  Plaintiff cites as support for his position a federal rule of evidence inapplicable here. *Id.*  MTC Defendants responded on February 27, 2017 [Doc. 87], correctly pointing out that Plaintiff has identified no authority suggesting that Defendants' failure to respond to his settlement demand entitles Plaintiff to summary judgment.  The Court denies as frivolous Plaintiff's request for summary judgment to be entered in his favor.

### IV. The Court will grant in part and deny in part Plaintiff's motion to amend his complaint.

On May 26, 2016, Plaintiff moved to amend his original complaint.  [Doc. 43].  He seeks to add the following parties to the lawsuit: Warden Martinez, the current warden of OCPF; Ms. Azua, OCPF librarian; Ms. Maurino, OCPF mailroom supervisor; and any "unknown person" who "sets policy, writes regulations, or is otherwise responsible for policy."  *Id.* at 1–2.  Plaintiff also seeks to add claims for damages against "all other parties in this suit," "[i]n the[ir] official and individual capacities."  *Id.* at 2.

MTC Defendants responded to Plaintiff's motion on July 8, 2016, arguing that because Defendants are entitled to summary judgment on both causes of action, Plaintiff's motion to amend should be denied on grounds of futility.  *See* [Doc. 60] at 1–2.  Defendant Marcantel responded to the motion on July 15, 2016, concurring in MTC Defendants' argument.  [Doc. 65].  Defendant Marcantel further asserted that "Plaintiff fails to allege he has exhausted administrative remedies with respect to the very vaguely-stated claims he seeks to add to his complaint."  *Id.* at 1.  Finally, he argued that the claim against the librarian should not be joined because the librarian "is very obviously not responsible for the mail policy," such that "there are

no questions of fact common to the existing claims regarding the mail policy and the proposed additional claims regarding the librarian." *Id.*

A plaintiff may amend a complaint "once as a matter of course" within 21 days of serving the complaint or within 21 days of service of a responsive pleading or service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Subsequently, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Although leave to amend a complaint generally should be given freely, a court may deny leave to amend where amendment would be futile. *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). Amendment is futile if the amended complaint would be subject to dismissal. *Id.*

Because the Court finds that Plaintiff's hardbound book claim survives summary judgment, the Court will address Plaintiff's motion to amend. The Court must consider whether Plaintiff can add damages claims against Defendants Marcantel, Frawner, and MTC, and whether Plaintiff can add Warden Martinez, Ms. Azua, and Ms. Maurino as defendants. The Court considers the claims against each defendant or prospective defendant in order of analytical convenience.

## A. Defendant Marcantel

In his initial complaint, Plaintiff sought only injunctive and declaratory (i.e., prospective equitable) relief. [Doc. 1] at 5; *see also* [Doc. 75] at 5. Though Plaintiff did not explicitly specify the capacity in which he was suing Defendant Marcantel, the Court assumes that

Defendant Marcantel was sued in his official capacity only, because prospective relief is appropriate as a remedy against an officer only in his or her official capacity. *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). Section 1983 permits suits against state officials in their official capacities for prospective relief, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), and such suits are not barred by the Eleventh Amendment, *see id.*; *Ex parte Young*, 209 U.S. 123, 159–60 (1908). Official-capacity suits for prospective relief are permitted where "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Plaintiff now seeks to add claims for damages against Defendant Marcantel in his official and individual capacities. [Doc. 43] at 2. Defendant Marcantel cannot be sued for damages in his official capacity. Because an official-capacity claim against a state official for damages is effectively a suit against the state itself, the Eleventh Amendment bars such a claim under the principle of sovereign immunity. *Will*, 491 U.S. at 66–67; *Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985). Correspondingly, a state official sued in his or her official capacity for damages is not a "person" under § 1983 and cannot be sued thereunder. *Will*, 491 U.S. at 71. Thus, Plaintiff's motion to amend is denied as to his damages claim against Defendant Marcantel in his official capacity.

Neither the Eleventh Amendment nor § 1983 bars a claim for damages against a state officer acting in his individual capacity. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991). However, a

§ 1983 claim against an officer in his individual capacity must be based on the defendant's own conduct—the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There can be no recovery under § 1983 on a theory of respondeat superior. A defendant may be individually liable under § 1983 based on the defendant's "personal liability" or "supervisory liability." *Montoya*, 662 F.3d at 1163–64. Personal liability is established by showing that the defendant was personally involved in the alleged constitutional violation. *Id.* at 1163. Supervisory liability exists where a defendant-supervisor "'creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected,'" the plaintiff "'to the deprivation of any rights . . . secured by the Constitution.'" *Id.* at 1163–64 (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). A plaintiff seeking to establish supervisory liability must show that "(1) the defendant promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

Plaintiff does not allege that Defendant Marcantel personally denied him publications in violation of his First Amendment right. Thus, Defendant Marcantel may be individually liable only if Plaintiff can show that the elements of supervisory liability have been satisfied. In his complaint, Plaintiff asserts only that he has been denied publications subject to an official NMCD policy prohibiting inmates from receiving hardbound books through the mail. *See* [Doc. 1] at 5–6; [Doc. 9] at 1. He does not assert—in his complaint or in his motion to amend—

that Defendant Marcantel himself was responsible for the policy.[17]  Further, even if Plaintiff had sufficiently alleged that Defendant Marcantel was responsible for promulgating NMCD's hardbound book policy, the policy on its face does not suffice to show that Defendant Marcantel caused the constitutional deprivation.  Indeed, to the extent the policy runs afoul of the First Amendment, it does so as it has been applied to Plaintiff, as described *supra*, based on his alternative means of accessing publications.  Defendant Marcantel himself is not individually liable as a supervisor for the alleged deprivation, based solely on his approval of the hardbound books policy.  Plaintiff does not allege Defendant Marcantel's personal or supervisory liability; therefore, Plaintiff's motion to amend is denied as to his claim for damages against Defendant Marcantel in his individual capacity.

### B. Defendant MTC

Plaintiff named Defendant MTC in his original complaint, seeking prospective equitable relief.  His motion to amend seeks to add a claim for damages against MTC.[18]  [Doc. 43] at 2.

A private entity acting under color of law is subject to suit under § 1983 based on the same principles that govern municipal liability.[19]  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194,

---

[17] Though Plaintiff himself does not plead Defendant Marcantel's personal responsibility for the hardbound books policy, Defendant Marcantel's *Martinez* Report suggests that he approved the policy.  *See* [Doc. 42-2] at 19.

[18] In his PF&RD, Judge Vidmar rejected MTC Defendants' argument that they were not liable under § 1983 because Plaintiff failed to allege their personal involvement in violating Plaintiff's First Amendment rights.  [Doc. 75] at 6–7.

[19] MTC does not question that, as a private corporation operating OCPF, it was acting under color of state law and thus was subject to suit under § 1983.  Indeed, this principle is well-established.  *See West v. Atkins*, 487 U.S. 42, 54–57 (1988) (doctor who contracted with state prison authorities to treat inmates acted under color of state law and was subject to suit under § 1983); *Herrera v. Cty. of Santa Fe*, 213 F. Supp. 2d. 1288, 1290 (D.N.M. 2002) ("It is settled in this District that Cornell, as the manager and operator of the detention center, would be considered a state actor for purposes of § 1983, and would therefore be amenable to suit under that provision.").

1216 (10th Cir. 2003).  In *Monell v. Department of Social Services*, the Supreme Court held that a municipality can be sued where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a governmental practice that "[a]lthough not authorized by written law," is "so permanent and well settled as to constitute a custom or usage with the force of law."  436 U.S. 658, 690–91 (1978) (internal quotation marks omitted).  Thus, the plaintiff must establish that the private entity instituted a policy "that was the direct cause or moving force behind the constitutional violations."  *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (internal quotation marks omitted).  An entity's liability may not be based on the unconstitutional actions of a single tortfeasor.  *Id.*

Where a municipality (or, as here, a private entity subject to *Monell* liability) has instituted an official policy that is unconstitutional, the municipal entity is liable.  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997).   This is true where the policy is unconstitutional on its face or as applied to the plaintiff.  *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1279 (10th Cir. 2009) ("If it turns out that the relevant ordinances are unconstitutional, whether on their face or as applied to [the plaintiff], the liability falls on the city, not on the officers personally."); *Galbreath v. City of Okla. City*, 568 F. App'x 534, 539–40 (10th Cir. 2014) (city could be held liable under § 1983 on the plaintiff's void-for-vagueness challenge to city policy as applied to the plaintiff).  Here, Plaintiff asserts that he has been denied hardbound books while at OCPF pursuant to NMCD and OCPF policy.  *See* [Doc. 9] at 1, 3.  As Judge Vidmar noted in his PF&RD, Defendants do not contest that their policies prohibit

27

prisoners from receiving hardbound books.  [Doc. 75] at 7–8.  Plaintiff has thus stated a *Monell* claim against MTC, and Plaintiff's motion to amend is granted as to his claim for damages against MTC.

### C. Defendant Frawner and Warden Martinez

As discussed above, the Court construes Plaintiff's original complaint to have sought prospective equitable relief only, against Defendants in their official capacities.  Plaintiff's motion to amend now seeks to add a claim for damages against Defendant Frawner in his official and individual capacities.  It also seeks to add as a defendant current OCPF Warden Martinez, in his official and individual capacities.  [Doc. 43] at 1–2.

Plaintiff's claims against Defendant Frawner and Warden Martinez in their official capacities—whether for injunctive relief or damages—are redundant.  Official capacity suits are suits against the governmental entity itself, and municipal entities (unlike states or state entities) can be sued directly for damages under § 1983 without running afoul of the Eleventh Amendment.  *See Graham*, 473 U.S. at 166–67 & 167 n.14.  When a municipality (or, as here, a private entity acting under color of state law, i.e., MTC) is sued, there is no need to assert an additional claim against a municipal officer in his official capacity.  *Id.*  Therefore, Plaintiff's existing claim for prospective relief against Defendant Frawner in his official capacity will be dismissed, and Plaintiff's motion to amend will be denied as to Plaintiff's claim for damages against Defendant Frawner and Warden Martinez in their official capacities.

Plaintiff's motion also seeks to add claims for damages against Defendant Frawner and Warden Martinez in their individual capacities.  [Doc. 43] at 2.  Unlike the official-capacity

claims, individual-capacity claims against municipal officials are not simply another way of asserting liability against the municipal entity—individual capacity claims are claims to recover damages from the individual defendants themselves.  *See Graham*, 473 U.S. at 166.  The parameters of individual liability under § 1983 have been set out *supra*: an individual defendant may be liable for his or her personal involvement in committing the constitutional violation or liable as a supervisor where the individual has implemented a policy that caused the constitutional deprivation.  *Dodds*, 614 F.3d at 1199.

As with Defendant Marcantel, Plaintiff does not allege that Defendant Frawner or Warden Martinez personally participated in denying Plaintiff any hardbound book.[20]  Therefore, they may be liable in their individual capacities only under a theory of supervisory liability for their own unconstitutional or illegal policies.  *Id.* at 1198.  Beyond identifying Defendant Frawner and Warden Martinez as wardens of OCPF, Plaintiff does not allege that either took any action to adopt or implement OCPF's hardbound book policy.  While it may seem a foregone conclusion that the very title of warden connotes responsibility for implementing the prison's policies, Plaintiff does not assert as much.  Indeed, Plaintiff's motion to amend asserts that, through discovery, he will find out who is responsible for hardbound book policy at NMCD and

---

[20] As discussed above in the Court's analysis of Plaintiff's hardbound books claim, Plaintiff has asserted (via affidavits filed after his complaint and motion to amend) that Warden Martinez will not approve his requests to order *paperback* books from publishers, cutting off one of his means of access to publications.  Because the *Turner* analysis requires evaluation of the prisoner's alternative means of access, Plaintiff's access to paperback books was an important—virtually decisive—consideration in the Court's denial of Defendants' motion for summary judgment on Plaintiff's hardbound books claim.  Still, Plaintiff's cause of action is based on the constitutionality of the hardbound book policy, and not the paperback book policy.  As Judge Vidmar found in the PF&RD, Plaintiff failed to exhaust his administrative remedies as to any potential claim based on his access to paperback books.  *See* [Doc. 75] at 28–29.  Therefore, Warden Martinez's involvement in denying paperback book orders does not establish his personal participation in Plaintiff's existing First Amendment claim, based on the hardbound books policy.

29

OCPF.  *See* [Doc. 43] at 2–3.  Plaintiff does not allege that Defendant Frawner and Warden Martinez themselves were responsible for implementing the hardbound book policy, which resulted in the alleged denial of his First Amendment rights.  The motion to amend will be denied as to Defendant Frawner and Warden Martinez in their individual capacities.

### D. OCPF Librarian Azua and Mailroom Supervisor Maurino

Finally, Plaintiff seeks to add as defendants OCPF librarian Azua and OCPF mailroom supervisor Maurino.  [Doc. 43] at 2.  Of these two individuals, Plaintiff states, "I personally spoke with and had face-to-face contact with them.  They 'relayed' the decisions to me from 'higher-up[]s.'"  *Id.*  Plaintiff seeks nominal damages in the amount of one dollar from each.  *Id.*

As described above, a party seeking to hold an official individually liable under § 1983 must establish that the official was personally involved in the deprivation of the constitutional right, either directly or as a supervisor.  *Montoya*, 662 F.3d at 1163–64.  Plaintiff does not state what "decisions" Ms. Azua and Ms. Maurino relayed to him.  Even assuming that Plaintiff is asserting that Ms. Azua and Ms. Maurino relayed information pertinent to his hardbound books claim—Plaintiff's only remaining claim—Plaintiff does not allege that any action of either Ms. Azua or Ms. Maurino deprived him of his First Amendment rights.    He does not claim, for example, that they withheld publications from him.  Merely relaying information to a plaintiff does not establish an officer's personal involvement.  *See Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013) (a warden's response to a prisoner's grievance concerning medical treatment, where the warden relayed information from medical staff, did not establish the warden's personal participation and "signified nothing more than a reasonable reliance on the

judgment of prison medical staff"); *cf. Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (denial of a grievance does not create the affirmative link between the individual officer and the alleged constitutional violation).  Nor does Plaintiff state any facts to suggest that they are liable on the basis of supervisory liability.  Plaintiff does not allege facts sufficient to state a § 1983 claim against Ms. Auza or Ms. Maurino in their individual capacities.  Plaintiff's motion to amend the complaint to add them as parties is denied.

## V. Conclusion

Plaintiff's hardbound book claim survives summary judgment.  Plaintiff's claim may proceed at this stage as against Defendant Marcantel in his official capacity for prospective relief and against Defendant MTC for prospective relief and damages.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Objections to Magistrate Judge's Proposed Findings and Recommended Disposition [Docs. 77, 79] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 75] are **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment [Docs. 39, 42] are **GRANTED IN PART and DENIED IN PART**.  Defendants' motions are **GRANTED** as to Plaintiff's claim regarding Defendants' policy prohibiting inmates from receiving through the mail publications containing photographs of female(s) partially or totally nude and/or posed in a sexually explicit position, and Plaintiff's claim on such policy is **DISMISSED with prejudice**.  Defendants' motions are **DENIED** as to Plaintiff's claim

regarding Defendants' policy prohibiting inmates from receiving hardbound books through the mail.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment [Doc. 86] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint [Doc. 43] is **GRANTED IN PART and DENIED IN PART**.  It is **GRANTED** as to Plaintiff's claim for damages against Defendant MTC.  It is **DENIED** in all other respects.  The claims against Defendant Frawner in his official capacity are **DISMISSED**.

**IT IS SO ORDERED.**

**M. CHRISTINA ARMIJO**
**Chief United States District Judge**